**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 1:18-cv-02916-RM-SKC

MARY FLORES, individually and on behalf of E.F., a minor child;
JOEL FLORES, individually and on behalf of E.F., a minor child;
BERTHA CEJAS, on behalf of V.S., a minor child;
MARIA CASTANEDA, on behalf of M.F. and J.F., minor children;
B.F., an individual, on behalf of herself and those similarly situated; and
JOHN DOES, 1-150, minor children,

       Plaintiffs,

v.

VICTORY PREPARATORY ACADEMY, a governmental entity;
RON JAJDELSKI, in his individual and official capacities;
JEFF SMITH, in his individual and official capacities;
CAMIL DELACRUZ, in her individual and official capacities;
ROSALIE MONTANO, in her individual and official capacities;
NORMA CLINKINBEARD, in her individual and official capacities;
JEFF REED, in her individual and official capacities;
JAMES SEAY, in her individual and official capacities;
NANCY BROOKS, in her individual and official capacities; and
JOHN DOES 1-10, in their individual and official capacities,

       Defendants.

_____

**ORDER**
_____

    This matter is before the Court on Defendants' motion to dismiss (ECF No. 25).

Plaintiffs brought this action under 42 U.S.C. § 1983, alleging Defendants violated their First and

Fourteenth Amendment rights during and after a high school assembly where students protested

by refusing to stand and recite the school pledge.  Defendants contend that Plaintiffs fail to state

a claim on some of their claims and that some Defendants are entitled to qualified immunity on

some of their claims.  For the reasons stated below, the motion is denied for the most part but granted on one issue.

## I.    LEGAL STANDARDS

In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the plaintiffs, and draw all reasonable inferences in the plaintiffs' favor. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014); *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010).  The complaint must allege a "plausible" right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007); *see also id.* at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  Conclusory allegations are insufficient, *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009), and courts "are not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555 (quotation omitted).  To determine whether a claim is plausible, a court considers "the elements of the particular cause of action, keeping in mind that the Rule 12(b)(6) standard doesn't require a plaintiff to set forth a prima facie case for each element." *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1247 (10th Cir. 2016) (quotation omitted).  However, if the allegations "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quotation omitted).

Qualified immunity shields individual defendants named in § 1983 actions unless their conduct was unreasonable in light of clearly established law. *Estate of Booker v. Gomez*,

745 F.3d 405, 411 (10th Cir. 2014).  "[W]hen a defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct."  *Id.* (quotation omitted).  "Asserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of review than would apply on summary judgment."  *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004).

## II.   BACKGROUND

For present purposes, these factual allegations in the complaint are accepted as true. Plaintiffs E.F., V.S., M.F., J.F., and B.F. ("the student Plaintiffs") attended Victory Preparatory Academy ("VPA"), a Colorado charter high school.  On the morning of September 28, 2017, VPA held an assembly in the gym.  As was customary at VPA, the students were expected to stand and recite the flag salute followed by the school pledge.[1]  After reciting the flag salute, the student Plaintiffs and "many if not all of the students . . . sat down and chose not to recite the school pledge."  (ECF No. 1 at ¶ 42.)  VPA administrators ordered the students to stand and recite the school pledge, but they refused.  (*Id.* at ¶¶ 43, 44.)  The students were then sent to their classes.

Minutes later, the students were instructed to return to the gym, where Defendant Jajdelski, the chief executive officer of VPA, "began questioning the students about their protest."  (*Id.* at ¶ 48.)  Some of the students had drafted a letter listing their concerns about

---

[1] "I (state your name) accept the VPA challenge to be a noble knight, and I pledge to do my best for myself, my family, my school, and my community."  (ECF No. 1 at ¶ 33.)

VPA,[2] and the letter was presented to Defendant Jajdelski. (*Id.* at ¶ 49.) Defendant Jajdelski attempted to have a discussion with the students about their concerns but soon became frustrated and ordered that the entire student body, about 120 students, be sent home for the day. (*Id.* at ¶¶ 51, 53.) Students who had driven to school were dismissed shortly thereafter, while VPA staff called the other students' parents to have them picked up. VPA staff also called the police, even though there were no reports of violent or threatening behavior. The police were present while parents were still arriving to pick up students.

When Plaintiffs Mary and Joel Flores arrived at VPA to pick up their son, Plaintiff E.F., they and other parents asked the police if they could speak with Defendant Jajdelski about why the students were being sent home. He refused to meet with them. The parents who had gathered in front of the school were instructed to leave and proceeded to do so. As they were leaving, Plaintiff Mary Flores interviewed students about the protest and recorded videos with her cell phone. The protest and schoolwide suspension were covered in a local TV news segment, which featured an interview with Plaintiff V.S. Plaintiff V.S. also commented about the protest on Facebook, including by sharing on his Facebook page a post by another student stating that "Defendant Jajdelski could suck the student's left nut." (*Id.* at ¶ 119.)

Students returned to VPA the following day, and normal operations continued at the school. The same day, Plaintiff V.S. and his mother were called to meet with Defendant Jajdelski. Defendant Jajdelski showed Plaintiff V.S. screenshots of his Facebook posts about the protest. Plaintiff V.S. apologized for the posts, but Defendant Jajdelski told him he had already

---

[2] At least ten separate concerns were listed, including: "How disciplinary actions are taken"; "Why student's individuality is oppressed"; "Seniors and Juniors need to be celebrated for academic success"; and "VPA is known to have a strict set of rules in place, however all the limitation imposed on students has become unbearable." (*Id.* at ¶ 36.)

decided to expel him from VPA.  Plaintiff V.S.'s mother told Defendant Jajdelski she wanted her son to remain at VPA, but she was compelled to sign paperwork withdrawing him from the school.

Two days after the protest, *La Prensa*, a weekly Spanish-language newspaper published by Plaintiffs Mary and Joel Flores, ran a frontpage article critical of VPA's handling of the September 28 protest.  Plaintiff B.F. was quoted in the article.  The complaint translates her comments as follows: "We refused to stand and they [the administration] yelled at us and told us 'Get up! Everyone get up!'"  (*Id.* at ¶ 90 n.4.)  Plaintiff B.F. also posted messages about the protest on Facebook.  She stated that she was proud of VPA students for taking "[a] step towards change" and encouraged them to continue refusing to recite the school pledge and to "[s]it down and link arms to show we are united."  (*Id.* at ¶¶ 86, 87.)

A few days later, Plaintiff B.F. and her father were called to meet with Defendant Jajdelski.  Defendant Jajdelski mentioned her Facebook posts about the protest and accused her of being a "ringleader" and "cyberbullying and intimidating other students into joining" the protest.  (*Id.* at ¶¶ 98, 100.)  Defendant Jajdelski told Plaintiff B.F.'s father that he needed to withdraw his daughter from VPA or she would be expelled.  Plaintiff B.F.'s father then executed the paperwork withdrawing her from the school.

About a week after the protest, Plaintiffs Mary and Joel Flores received a letter from VPA stating that they were not allowed on the VPA campus.  The campus ban was unanimously approved by the VPA board members, who are the other named individual Defendants in this lawsuit.  The letter from VPA states that after the September 28 protest, these Plaintiffs "chose to detain, film, and photograph [VPA] students without school and parent permission"; "[t]his

activity is not only illegal, it is a violation of school policy"; and these "actions created an unsafe situation and required police intervention." (*Id.* at ¶ 70.)  Apparently referring to the article in *La Prensa*, the letter further states that these Plaintiffs "intentionally chose to create a false narrative with students, the public, and the media regarding VPA student activities and school administration decisions" and perpetuated "information which is false and manipulative regarding [VPA]." (*Id.*)  VPA never rescinded the campus ban, and Plaintiffs Mary and Joel Flores were prevented from attending their son's home sports games and parent-teacher conferences for the rest of the school year.

Plaintiffs' complaint asserts five claims for relief.  The first two claims are discussed together because they overlap significantly.  Plaintiffs contend that Defendant Jajdelski and VPA violated students' First Amendment rights first by compelling them to recite the school pledge and second by suspending them when they peacefully expressed themselves by refusing to recite the pledge.  These claims are asserted on behalf of the student Plaintiffs and all students who were suspended on September 28, 2017.[3]

In their third claim, Plaintiffs assert that Defendants Jajdelski and VPA retaliated against Plaintiffs V.S. and B.F. by expelling them for their social media posts about the protest in violation of their First Amendment rights.  This claim is brought on behalf of Plaintiffs V.S. and B.F. only.[4]

---

[3] Plaintiffs have filed a motion for class certification (ECF No. 67) seeking to certify two classes: all VPA students who were suspended on September 28, 2017, and all students who currently attend VPA.

[4] Only Plaintiff V.S.'s retaliation claim is before the Court on Defendants' motion to dismiss.  Defendants concede that the factual allegations are sufficient for Plaintiff B.F.'s retaliation claim (ECF No. 40 at 6), and Plaintiffs are no longer seeking to certify a class consisting of all students who were suspended or expelled for social media posts related to the September 28 protest (ECF No. 67 at 1 n.1).  In addition, Plaintiffs state in their response brief that they are bringing their due process claims related to the suspensions and expulsions as part of their fifth claim for relief.  (ECF No. 36 at 8 n.3.)

In their fourth claim, Plaintiffs contend that Defendants Jajdelski, VPA, and VPA's board members violated the First Amendment rights of Plaintiffs Mary and Joel Flores by banning them from the VPA campus in retaliation for their newspaper coverage of the September 28 protest.  Plaintiffs bring this claim on behalf of Plaintiffs Mary and Joel Flores only.[5]

Plaintiffs' fifth claim for relief has several parts.  Plaintiffs contend that Defendants violated their Fourteenth Amendment rights by suspending and expelling students without affording them due process.  Plaintiffs also contend that Defendants violated the rights of Plaintiffs' Mary and Joel Flores by banning them from campus without affording them due process.  Plaintiffs further contend that VPA's discipline policies, including those set forth in VPA's Parent/Student Handbook, are unconstitutionally vague and overbroad.  Plaintiffs bring this part of their claim on behalf of Plaintiffs E.F. and M.F. and "all students who currently attend VPA."  (ECF No. 67 at 2.)

## III.   DISCUSSION

### A.     First and Second Claims

Defendants argue that Plaintiffs' first and second claims should be dismissed because compelling students to recite the school pledge is legally permissible.  They also argue that Defendant Jajdelski is entitled to qualified immunity on these claims.  These arguments lack merit.

Students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate."  *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969).

---

[5] Plaintiffs also assert that the campus ban violated the due process rights of Plaintiffs Mary and Joel Flores, but that is part of Plaintiffs' fifth claim for relief.  (*See id.*)

In *Tinker*, the Supreme Court set forth the general rule for regulating school speech: "to justify prohibition of a particular expression of opinion," school officials must demonstrate that "the forbidden conduct would materially and substantially interfere with the requirements of appropriate discipline in the operation of the school." *Id.* at 509. "[A] mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint" is insufficient. *Id.* Thus, *Tinker* held that school officials could not prohibit students from wearing black armbands to protest the conflict on Vietnam when their protest did not interrupt school activities and school officials had no reasonable basis to forecast any substantial disruption. *Id.* at 514.

Courts use a different standard for determining when school officials can regulate school-sponsored speech, such as a speech at a school event or in a school newspaper. *See Morse v. Frederick*, 551 U.S. 393, 405-06 (2007). School-sponsored speech includes "expressive activities that students, parents, and members of the public might reasonably perceive to bear the imprimatur of the school." *Id.* at 405 (quotation omitted). School officials may exercise "editorial control over the style and content of student speech in school-sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns." *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 273 (1988). But expressive activity is not school-sponsored speech if no one would reasonably believe it bears the school's imprimatur. *Morse*, 551 U.S. at 405. For this reason, *Morse* held that a student did not engage in school-sponsored speech when, at a school event, he unfurled a banner that was reasonably viewed by the principal as promoting illegal drug use. *Id.*

In addition, the Supreme Court has clearly and specifically established that students have the right to refuse to recite the flag salute. *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624,

642 (1943). It is also well established that "the right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705 (1977). Indeed, "in the context of protected speech, the difference [between compelled speech and compelled silence] is without constitutional significance, for the First Amendment guarantees 'freedom of speech,' a term necessarily comprising the decision of both what to say and what *not* to say." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 796-97 (1988).

Plaintiffs' first claim is based on the commonsense principle that if school officials cannot compel students to recite the flag salute, VPA cannot compel students to recite the school pledge. Plaintiffs' second claim is based on a corollary of the first—if VPA cannot compel students to recite the school pledge, it also cannot suspend them for peacefully expressing themselves by refusing to do so. Defendants argue nonetheless that compelling students to recite the school pledge is permissible because it is reasonably related to legitimate pedagogical concerns.

Defendants do not even attempt to satisfy the *Tinker* standard by arguing that a substantial disruption to school discipline would occur if students were not compelled to recite the school pledge or that their refusal to recite the school pledge on September 28 substantially interfered with school activities. According to the complaint, after the protest the students were simply sent to their classes to begin their courses for the day. (ECF No. 1 at ¶ 44.) Refusing to stand and recite the school pledge is an archetypal example of "a silent, passive expression of opinion, unaccompanied by any disorder or disturbance," that is protected under *Tinker*, 393 U.S. at 508.

Defendants' argument that the standard for evaluating school-sponsored speech applies here is unsupported and misguided.  Defendants have not attempted to argue that the school pledge is a form of school-sponsored speech, and they make no reasoned attempt to explain why the school pledge is materially different from the flag salute.  The Court finds that no one would reasonably believe the student's refusal to stand and recite the school pledge on September 28 bore VPA's imprimatur.  Bypassing this threshold issue, Defendants simplistically argue that they can compel students to recite the school pledge merely because they believe it serves a legitimate pedagogical purpose.  But as should be clear based on the caselaw cited above, the standard for evaluating school-sponsored speech does not apply in this context.

Defendants' reliance on *Corder v. Lewis Palmer School District No. 38*, 566 F.3d 1219 (2009), is misplaced.  There, a student engaged in school-sponsored speech at a graduation ceremony when she gave a speech that was different from the one she submitted to the school ahead of time.  *Id.* at 1222.  Because the graduation ceremony bore the imprimatur of the school and due to the religious nature of the speech she gave, the school required her to publicly apologize before she could receive her diploma.  *Id.* at 1222-23.  The *Corder* court concluded that the school did not violate the student's First Amendment rights by compelling her to apologize because her apology "was directly related to her school-sponsored speech at the high school graduation." *Id.* at 1231.  No analogous circumstances are present in this case.  No school-sponsored speech is implicated by the September 28 protest.  Nor have Defendants shown that the school pledge is directly related to any school-sponsored speech.

Defendants' contention that Defendant Jajdelski is entitled to qualified immunity is also unavailing.  Since *Barnette*, 319 U.S. at 642, any reasonable school official would understand

that if school officials cannot compel students to recite the flag salute, then they likewise cannot compel students to recite a school pledge.  Since *Tinker*, 393 U.S. at 511, any reasonable school official would understand that "[i]n the absence of a specific showing of constitutionally valid reasons to regulate their speech, students are entitled to freedom of expression of their views." *See also id.* ("In our system, state-operated schools may not be enclaves of totalitarianism."). These standards were clearly established and sufficiently specific to give Defendant Jajdelski fair warning that his conduct was constitutionally prohibited.  Therefore, he is not entitled to qualified immunity on these claims.

### B.    Third Claim

Defendants contend that Plaintiff V.S.'s retaliation claim must be dismissed because he did not engage in protected activity.  They also contend that Defendant Jajdelski is entitled to qualified immunity on this claim.  The Court is not persuaded by these arguments.

To state a retaliation claim, a plaintiff must allege that (1) he was engaged in constitutionally protected activity, (2) a defendant's action caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendant's action was substantially motivated as a response to his exercise of his First Amendment speech rights.  *A.M. v. Holmes*, 830 F.3d 1123, 1162 (10th Cir. 2016).

According to the complaint, Plaintiff V.S. was featured prominently in a local TV news segment about the September 28 protest.  The complaint also alleges that Plaintiff V.S. posted messages on his Facebook page that were critical of Defendant Jajdelski and that he "shared" a message posted by another student that said "Defendant Jajdelski could suck the student's left nut."  (ECF No. 1 at ¶ 119.)  The day after the protest, Plaintiff V.S. was called to meet with

Defendant Jajdelski, shown screenshots of his Facebook posts, and told he was being expelled from VPA. (*Id.* at ¶¶ 121, 122, 125.)

Defendants contend they could expel Plaintiff V.S. for his Facebook posts because they were obscene and therefore were not protected activity that would support a retaliation claim. But even if the Court accepts for present purposes Defendants' contention that some of Plaintiff V.S.'s speech was obscene, Defendants do not argue that they reasonably believed the Facebook posts would substantially disrupt or materially interfere with school activities. *See Tinker*, 393 U.S. at 740. Moreover, the complaint alleges that Plaintiff V.S. engaged in other speech that was constitutionally protected—by expressing his views about the protest on Facebook and by participating in the local TV news segment. Whether protected activity substantially motivated Plaintiff V.S.'s expulsion is a question of fact not suitable for resolution at this stage of the case. According to the complaint, VPA retaliated against others who publicly criticized it by expelling Plaintiff B.F. and by banning Plaintiffs Mary and Joel Flores from campus. These allegations, if proven, would support the assertion that Plaintiff V.S. was also targeted, at least in part, because of his public criticism of VPA. For present purposes, the Court concludes merely that Defendants have not shown they are entitled to dismissal of this claim.

Nor have they shown that Defendant Jajdelski is entitled to qualified immunity. It is at least plausible that Defendant Jajdelski expelled Plaintiff V.S. for engaging in protected activity, and the other elements of a retaliation are plausibly alleged in the complaint. And it is clear that retaliating against Plaintiff V.S. simply for expressing criticism of VPA would be a violation of his clearly established rights.

12

### C.     Fourth Claim

Defendants argue that Defendant Jajdelski and the VPA board are entitled to qualified immunity with respect to Plaintiffs' fourth claim because it is not clearly established that banning Plaintiffs' Mary and Joel Flores from the VPA campus would violate their rights.[6]  The Court rejects this argument.

Defendants' contention that parents do not have a constitutional right to access school property is beside the point.  The protected activity that supports this retaliation claim is these Plaintiffs' exercise of their First Amendment right to criticize VPA.  To satisfy the second element of a retaliation claim Plaintiffs Mary and Joel Flores must allege merely that Defendants' conduct of banning them from the VPA campus would chill persons of ordinary firmness from exercising their rights.  *See A.M.*, 830 F.3d at 1162.  Defendants have made no argument or showing that being banned from campus would not chill parents of ordinary firmness from exercising their right to criticize officials at their child's school.  And with respect to the third element of a retaliation claim, the complaint alleges circumstances that suggest the decision to ban these Plaintiffs from the VPA campus was substantially motivated as a response to their criticism of VPA.  The letter informing them of the ban mentions both safety issues and concerns about how they "intentionally chose to create a false narrative with students, the public, and the media regarding VPA student activities and school administration decisions."  (ECF No. 1 at ¶ 70.)  The Court finds Plaintiffs have stated a plausible claim that the campus ban was

---

[6] A qualified immunity defense is available to defendants sued in their individual capacities only.  *Beedle v. Wilson*, 422 F.3d 1059, 1069 (10th Cir. 2005).  Although Plaintiffs assert this claim against VPA as well as the individual Defendants in their individual and official capacities, Defendants' motion does not address the claim against VPA or the official-capacity claims, which are treated as claims against VPA.  *See Meyer v. Bd. of Cty. Comm'rs*, 482 F.3d 1232, 1237 (10th Cir. 2007).

retaliatory, and it is beyond dispute that Plaintiffs Mary and Joel Flores had a clearly established right to publicly criticize VPA without facing retaliation. Accordingly, no Defendants have shown they are entitled to qualified immunity on this claim.

> **D.     Fifth Claim**

As mentioned above, the Plaintiffs' fifth claim has several parts. Plaintiffs assert that the student Plaintiffs and the entire student body were denied due process when VPA summarily suspended them after the September 28 protest and that Plaintiffs V.S. and B.F. were denied due process when they were summarily expelled shortly thereafter. Plaintiffs also assert that Plaintiffs Mary and Joel Flores were denied due process when they were summarily banned from the VPA campus. In addition, Plaintiffs assert that VPA's Parent/Student Handbook is unconstitutionally overbroad and vague.

> 1.     Students' Due Process Claims

To state a procedural due process claim, a plaintiff must allege a constitutionally protected liberty or property interest and a governmental failure to provide an appropriate level of process. *Citizen Ctr. v. Gessler*, 770 F.3d 900, 916 (10th Cir. 2014).

> Students facing temporary suspension have interests qualifying for protection of the Due Process Clause, and due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story.

*Goss v. Lopez*, 419 U.S. 565, 581 (1975).

Defendants contend the complaint fails to state a claim that the student Plaintiffs' due process rights were violated when they were sent home after the September 28 protest, stating that "[t]he informal back and forth between [Defendant] Jajdelski and the student body was

14

sufficient to satisfy due process in that particular situation." (ECF No. 25 at 6-17.) The Court

recognizes the need for flexibility in this area, *see West v. Derby Unified Sch. Dist. No. 260*, 206

F.3d 1358, 1364 (10th Cir. 2000), but this contention mocks the very notion of due process.

Defendants cite no authority for the proposition that school officials may summarily suspend an

entire student body of approximately 120 students in the manner alleged here.  It is inconceivable

that these students had an opportunity to present their side of the story in the brief period

between when they were called back to the gym and when Defendant Jajdelski announced their

collective suspension.  It is not even clear that all the students were guilty of the "charge" of

refusing to stand and recite the school pledge.  Further, Defendants fail to address Plaintiffs'

contention that the student Plaintiffs had no avenue to appeal their suspensions.  The Court finds

Plaintiffs have stated a plausible claim that the schoolwide suspension[7] was implemented

without affording the students due process.

Defendants' argument with respect to the expulsions[8] of Plaintiffs V.S. and B.F. fares no

better.  According to the complaint, the voluntary withdrawal forms were signed before the

conduct allegedly giving rise to their expulsions, and the decision to expel them was made before

they and their parents were called to meet with Defendant Jajdelski.  *See Goss*, 419 U.S. at 584

(stating that in additional to the due process requirements above, "[l]onger suspensions or

expulsions for the remainder of the school term, or permanently, may require more formal

procedures").  Defendants do not dispute Plaintiffs' allegation that the student Plaintiffs had no

---

[7] Although Defendants "dispute" that "sending the students home can be considered a 'suspension'" (ECF No. 25 at 16), they offer no argument or authority for why the word should not be given its ordinary meaning in this context.
[8] For present purposes, the Court accepts the allegation that Plaintiffs V.S. and B.F. were not allowed to stay at VPA against their and their parents' wishes, and thus they were, in effect, expelled. Defendants' contention that these Plaintiffs voluntarily withdrew from VPA is not appropriate for resolution at this stage of the case.

avenue to appeal their expulsions.  Viewing the allegations in the light most favorable to Plaintiffs, the complaint states a claim that Plaintiffs V.S. and B.F. were expelled from VPA without due process.

2.      Parents' Due Process Claim

Even though courts have determined that parents do not have a constitutional right to access school property, *see Knight v. Bieneman*, No. 14-cv-2641-WJM-CBS, 2015 WL 196224, at *6 (D. Colo. Jan 14, 2015), that does not mean that banning parents from a campus is without due process implications.  In *Johnson v. Perry*, 859 F.3d 156, 176 (2d Cir. 2017), the court recognized that parents have a clearly established "right not to be excluded, based on viewpoint differences or because of possible annoyance, from sports events to which the public was invited."  Moreover, as discussed above, parents have a right not to be retaliated against for their protected activity.

Defendants argue that Plaintiffs' due process claim based on VPA banning Plaintiffs Mary and Joe Flores from the VPA campus necessarily fails because they do not have a constitutional right to be there.  But these Plaintiffs allege they were excluded from sports events and parent-teacher conferences because they exercised their First Amendment right to criticize school officials at VPA.  Their interests in not being excluded from these events and in being able to exercise their First Amendment rights without facing retaliation suffice to entitle them to some level of process.  Yet Defendants do not make any argument that they provided any level of process to these Plaintiffs.  Accordingly, Defendants are not entitled to dismissal of this claim.

3.      Parent/Student Handbook Claim

Plaintiffs' fifth claim also challenges VPA's Parent/Student Handbook as unconstitutionally vague and overbroad.  Defendants contend that Plaintiffs fail to state a claim that the handbook is unconstitutional on its face.  The Court agrees with Defendants on this point.

To successfully mount a facial challenge, a plaintiff must establish that no set of circumstances exists under which the challenged policy or law would be valid.  *West*, 206 F.3d at 1367.  "[C]ases of alleged unconstitutional enforcement of a public school district's disciplinary policies, like any other laws, are best addressed in most instances when (and if) they arise, rather than prophylactically through the disfavored mechanism of a facial challenge."  *Id.* (quotation omitted).  Further, "given the school's need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process, school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanctions."  *Id.* at 1368 (quotation omitted).

Although Plaintiffs argue that the Parent/Student Handbook gives VPA unbridled discretion to discipline students, they have not shown that no set of circumstances exists under which any specific policy set forth therein would be valid.  It is not alleged that the handbook had a chilling effect on the free speech rights of students at VPA or even that a specific provision in the handbook provided the basis for any specific disciplinary measure taken by VPA. Therefore, the Court finds the complaint does not establish a plausible basis for concluding that the handbook is unconstitutionally vague or overbroad, and Defendants are entitled to dismissal of Plaintiffs' facial challenge to the Parent/Student Handbook.

    4.    <u>Qualified Immunity</u>

Defendants contend that Defendnat Jajdelski and the VPA Board are entitled to qualified immunity on the entirety of Plaintiffs' fifth claim for relief.  As explained above, however, Plaintiffs have stated claims for violations of their due process rights.  The Court further finds that Plaintiffs' entitlement to due process was clearly established such that no Defendant is entitled to qualified immunity on these claims.

## IV.   CONCLUSION

Defendants' motion to dismiss (ECF No. 25) is GRANTED IN PART with respect to Plaintiffs' facial challenge to the constitutionality of VPA's Parent/Student Handbook.  In all other respects, for the reasons stated above, the motion is DENIED IN PART.

Plaintiffs' notice of supplemental authority (ECF No. 76) had no effect on the Court's determination that Plaintiffs failed to state a claim based on their facial challenge the Parent/Student Handbook; accordingly, Defendants' motion to strike the notice (ECF No. 78) is DENIED AS MOOT.

DATED this 28th day of August, 2019.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge